No. 20,151.

WILLIS HARPER and CHARLES WHITTAKER, Partners, doing business as THE PITTSBURG PRODUCE & FRUIT COMPANY, *Appellees,* v. THE EARL FRUIT COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. SALE—*Fruit—Subject to Inspection—No Implied Warranty.* On a sale of a carload of fruit subject to inspection and acceptance, if acceptance follow inspection, there is no implied warranty that the fruit was in good condition and merchantable, and the full price must be paid.

2. SAME—*Spoiled Fruit—No Agreement to Pay Damages.* Oral negotiations between a buyer of fruit, accepted and paid for after inspection, and the seller's agent, considered, and held to contain no agreement on the part of the agent for an allowance to the buyer of any sum on account of spoiled fruit.

Appeal from Crawford district court; ANDREW J. CURRAN, judge. Opinion filed March 10, 1917. Reversed.

*F. B. Wheeler*, of Pittsburg, for the appellant.

*C. S. Denison*, and *John L. Kirkpatrick*, both of Pittsburg, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one to recover damages incident to the sale of a carload of prunes, the ground of the action being breach of an implied condition of the contract of sale that the prunes were in good condition and were merchantable. The cause was tried by the court without a jury. Judgment was rendered in favor of the plaintiffs and the defendant appeals.

There is no substantial conflict in the evidence. There is some difference in details, and the evidence for the defendant is more explicit and positive than for the plaintiffs, but the controlling facts are clear and are sufficiently established by the evidence on behalf of the plaintiffs.

The plaintiffs contracted for three carloads of prunes of 1000 crates each, at the price of ninety cents per crate, or $900 per car. One car was delivered, accepted, and paid for. The controversy arose over the second car. The car was billed by the defendant to itself, and was placed on track at Pittsburg subject to plaintiffs' inspection and acceptance. The plaintiffs inspected the fruit, discovered that a portion of it was spoiled, and notified the defendant's agent at Kansas City, Mo., to that effect. The plaintiffs did not at that time accept the fruit or pay the draft for the price in order to obtain the bill of lading. The plaintiffs estimated the damage at twenty-five per cent. The agent was a sales-agent, without authority to allow rebates or other claims, and he ordered the railway company to re-ice the car and divert it to St. Louis. The plaintiffs then notified the agent not to divert the car. The plaintiffs wanted to sort the fruit, ascertain the damage, and take credit for the amount. The agent could do no more than submit a claim for adjustment. He did not (and under the limitation on his authority could not) assent to the plaintiffs' proposition. On the other hand, he advised that the basis contemplated by the plaintiffs would not be considered, that if the plaintiffs took the car it would be at the contract price of ninety cents per crate, the matter of an allowance to be taken

up with the defendant later, and that if the plaintiffs decided to handle the car that way, to let him know as soon as the fruit was sorted, so he could report for credit. The plaintiffs then accepted the car and the diversion order was canceled. The plaintiffs sorted the fruit and paid the draft for the full price, held by a Pittsburg bank. Immediately after paying the draft the plaintiffs sued for damages and garnished the proceeds of the draft in the hands of the bank. The explanation of this peculiar conduct is found in the following testimony of one of the plaintiffs:

"Q. Well there was no hope held out to you? A. Well, we were proceeding on our contract irrespective of any talk. We had a contract with the company.

"Q. Irrespective of any conversation you had with Mr. Jones or not? A. Irrespective of any conversation.

"Q. He did tell you he had diverted the car, did he not? A. He stated his people had authorized him to divert it.

"Q. And you told him not to divert it? A. I requested him not to divert it. There was no other prunes in the market at that time."

The following testimony on behalf of the defendant was not contradicted on rebuttal:

"Pittsburg is a very small market, has to be distributed, and this fruit here in Pittsburg would n't get into the market, like St. Louis [where] there is probably 100 salesmen and they put it up and auction it off, and the sale is perhaps made in one to two hours; and the Fruit Company wanted this car sent to St. Louis and put it up and sell it, and then if Mr. Harper wanted a car, we always had a car on the track in Kansas City which we could have shipped him at once. That car in St. Louis would have been disposed of in an hour or two, but in a small place like this he says it took him five days. . . . Mr. Harper accepted the car after inspection on September 17. From that time up to the 26th of September, I took no further steps looking to an adjustment of it because there was nothing, to do until I heard from Mr. Harper, as to what his claim was."

Neither the cause of action pleaded nor any other cause of action in favor of the plaintiffs was established. The carload of fruit was tendered to the plaintiffs in fulfillment of the contract, subject to inspection and acceptance. The plaintiffs could take it or reject it. They did inspect it, ascertained its condition, and notified the defendant's agent of its unsatisfactory condition. The fruit was in the defendant's possession, and belonged to the defendant until the plaintiffs ac-

cepted it. Without acceptance the plaintiffs had no title to it or property interest in it. Since it was not accepted after inspection the defendant had the right to do with it as it pleased. The defendant could divert it to a market where the loss would be minimized, if it so desired. Choosing this course, it might be liable for damages in not supplying a car of fruit which the plaintiffs could accept, or damages for delay in getting a car of sound fruit to the plaintiffs in fulfillment of the contract. But with the car of unaccepted and spoiling fruit on track at Pittsburg it could choose its course of conduct, and it did choose to divert the car. The plaintiffs then undertook to secure possession of the fruit. They obtained possession of the fruit by means of oral negotiations requiring payment of the full price, but contemplating presentation of a damage claim for allowance. To say that although the plaintiffs conducted the negotiations, with the result stated, they were all the time proceeding irrespective of such negotiations, and were covertly relying on the original contract, would be to say that they obtained possession of the fruit by fraud. Assuming that what the plaintiffs' witness meant was that after the diversion order had been filed they elected to accept the car under the original contract rather than under the oral negotiations, and waiving the fact that they neglected to disclose their true intention to the defendant's agent, the plaintiffs can not recover. There was no express warranty. The fruit was sold subject to inspection and subject to acceptance or rejection according to the result of inspection. It is elementary law that in such cases there is no implied warranty, and if acceptance follow inspection the full price must be paid. (35 Cyc. 410, 229.) If, as the plaintiffs' witness (a member of the firm) states, the oral negotiations were not assented to, or were not assented to as the defendant's agent understood them, they need not be considered. Should they be considered, they contain no agreement whatever for any allowance, either of a definite sum or of a grace credit. The agent merely promised to submit the plaintiffs' claim of loss to the defendant for adjustment.

Because the plaintiffs failed to make out a case on any theory, the judgment of the district court is reversed, and the cause is remanded with direction to enter judgment for the defendant.